IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WALTER R. KARPINIA )
Doctor of Medicine )
South Dixie St. )
West Palm Beach, Florida 33401 )
    And Others Similarly Situated, )
        Plaintiff )
) JURY DEMAND
v. )
)
AMERICAN ASSOCIATION OF )
MEDICAL COLLEGES )
2450 N. St. N.W., )
Washington, D. C. 20037 )
    and )
)
EDUCATIONAL COMMISSION FOR )
FOREIGN MEDICAL GRADUATES, )
)
    and )
)
NATIONAL RESIDENT MATCHING PROGRAM )
)
    and )
)
DR. EMMANUAL CASSIMATIS )
    And Others Similarly Situated )

## COMPLAINT

1. Plaintiff is a citizen of the United States and a resident of the State of Florida. He was born on May 16, 1960. He joined the Air Force of the United States in 1978 when he was 18 years old. He served for 6 years and was discharged voluntarily in 1982 under "Honorable Conditions."

2. This Court has jurisdiction under 42 U.S.C. 1367; under the Age Discrimination Act, 29 U.S.C. 631(a); under the Human Rights Act of the District of Columbia, DC Code 2-1402; under the Sherman Antitrust Act; and under the Immigration law of the United States, 8 U.S.C.

1182 and 29 C.F.R. 655.705.

3. Venue in this case is appropriate because the Defendants American Association of Medical Colleges (AAMC) and the National Resident Matching Program (NRMP) are headquartered in the District of Columbia and because the Defendant Educational Commission for Foreign Medical Graduates (ECFMG) is owned by the same health care organizations that own the AAMC and the NRPM. Defendant Emmanuel Cassimatis was the President and Chief Executive Officer of the ECFMG in 2012 and has performed his duties in the District of Columbia as well as in Philadelphia, Pennsylvania.

4. Plaintiff has earned a Bachelor's Degree (1987), a Master's Degree in Mechanical Engineering (1991), and a Doctor of Medicine Degree (2011). He worked from 1988 until 2007 as a full-time Structural Engineer. In 2007 the Plaintiff decided to become a Medical Doctor. He graduated from a Medical College in 2011 in St. Kitts, which is certified as being equivalent to graduation from a domestic medical college.

5. Defendant American Association of Medical Colleges (AAMC) is a not for profit organization which has its Headquarters in Washington, District of Columbia at 2450 N St., N.W. Washington, D.C. 2003-1127.

6. Defendant National Resident Matching Program (NRMP) is a not for profit organization and is an incorporated entity which is owned by the members and owners of the Medical Colleges of the AAMC. The Defendant NRMP has the same postal address as the AAMC, and has one e-mail address which is www.aamc.org.

7. Defendant Educational Commission for Foreign Medical Graduates (ECFMG), like the AAMC and the NRMP, is a not for profit incorporated entity owned owned by about 125 or more members who are also medical colleges in the United States and is managed and operated

by accredited medical schools in the United States and by approximately 375 major teaching hospitals and health systems

8. The "Medical College Admissions Test" (MCAT) is administered several times a year by the Defendants or one of them.

9. Plaintiff took the MCAT examination early in 2007. Plaintiff obtained a score of 29, which was above the average for that examination. The average score for test takers varies by year, but for most years the average score was 24 or 25. Most applicants who score that high were interviewed by admissions offices of several medical schools in the United States

10. In 2007 Plaintiff applied for admission to four medical schools in Florida, including the Medial College of the University of Florida (UFCOM).

11. Plaintiff on his own visited UFCOM, found a University of Florida admissions committee Doctor, and asked the Doctor what the defects were in his application. That doctor told him that "You are too old to be a doctor."

12. The admissions committee of the Medical School did not schedule any interview for Plaintiff, and the Medical School did not consider him for admission.

13. The Postal Service address of the NRMP is the same as the address of the AAMC in Washington, D.C. set forth in para. 5, above.

14. Each of the three organizational Defendants is owned by about 125 or more members who are also medical colleges in the United States and is managed and operated by accredited medical schools in the United States and by approximately 375 major teaching hospitals and health systems. *See Jung M.D. v. et al. v. Association of American Medical Colleges*, 390 F. Supp. 2d 119,160 (D.D.C 2004).

15. NRMP has two e-mail addresses: www.nrmp.org and www.aamc.org. The two

Defendant organizations NRMP and AAMC share the same toll free telephone number: 1-866-617-5833.

16. Doctor Emmanuel Cassimatis is a Medical Doctor and was the President and Chief Executive of the ECFMG when he signed the Certification of Plaintiff in May 2012. Plaintiff believes that he still holds that position.

17. The NRMP is not only a corporation or corporate employer, but it is also commonly called the "Match" which is also an electronic program in which the "prospective medical residents enter into contracts with and submit to the NRMP a ranked list of desired medical positions with [the medical schools and health care] institutions" in which they agree to accept an assignment to a resident position. *Jung, supra,* 390 F. Supp. 2d at 125. NRMP assigns Residents to those jobs at health care facilities. The institutions themselves also enter into contracts with the NRMP, and agree to employ those residents placed by the Match. The NRMP using residents qualified by ERAS through an algorithm "'matches' the students' lists against the institutions' rankings, resulting in the assignment of each of prospective medical resident to one residency program" each year. *Jung, supra,* 390 F. Supp. 2d at 125.

18. Each year in which the Match is conducted, there is a flow of information such as quota change forms, resident biographic data, updates of institutional information, information and data forms from institutions, rank order data forms, compensation package information, visa and sponsorship data, etc. which is sent to the headquarters of the Defendants in Washington, D.C., who are the sole repository of that information.

19. The Defendants have functionally granted a preference to foreign nationals over citizens of the United States, in matching candidates for Resident Doctor with the needs of hospitals and other health related providers in the United States.

20. Defendants charge from $6,000 or $7,000 per student each year for foreign applications for employment and subsequent alien sponsorship at hospitals and other health associations which employ Resident Doctors.

21. For the first year, Resident Doctors are paid about $50,000 and higher by the Defendants and usually receive health insurance, vacation, uncompensated benefits, and retirement benefits.

22. The payment schedule for a Resident Doctor increases each year after the first year, with higher pay each year. Residency jobs last from 3 to 6 years. Family medicine may be 3 to 4 years, and other specialties such as surgeons for 6 years.

23. Defendants are paid sponsorship fees every year for every Resident Doctor who is not a citizen of the United States who is employed as a Resident Doctor, but the Defendants are not paid such fees for citizens who are citizens of the United States whom they place as resident doctors.

24. Defendants do not seek Exchange Visitor Sponsorship fees for placing citizens of the United States as resident doctors.

25. Under the immigration laws of the United States, employers – including hospitals and other medical organizations – are required to recruit and hire citizens of the United States who are equally qualified or better qualified than non-resident doctors. 8 U.S.C. 1182(n)(1)(E)-(G); 20 C.F.R. 655.706(c)(1).

26. Under the Statute and Regulation set forth above, employers may not hire alien applicants where doing so causes a direct or indirect displacement of citizens of the United States.

27. The conduct of the Defendant in denying applicants or candidates for employment as

Resident Doctors who are age 50 or above violates the Age Discrimination in Employment Act (ADEA). 29 U.S.C. 623 (2000); *Smith v. City of Jackson*, 544 U.S. 228, 240–42 (2005). The ADEA considers not only purposeful discrimination based upon age against employees or applicants for employment who are age 40 or higher, but it also prohibits discriminatory practices which have a disparate impact because of age, unless the employer can show that its conduct was "a reasonable factor other than age." The Supreme Court ruled that employment practices which have an adverse impact against older workers or applicants are unlawful , unless the employer can show that the practice was based upon a "reasonable factor other than age" *Smith v. Jackson, supra*, 544 U.S. at 241–42.

28. Plaintiff seeks a Class certification under Rule 23(a), (b) and (c) of Federal Rules of Civil Procedure for certification of a class of 30 or more applicants or candidates who were age 45 or older in 2010 when they sought positions as resident doctors but were denied that application in whole or in part because of their age in 2012, or believed that it was futile to seek a resident doctor position. Plaintiff believes that there were 30 or more applicants or candidates and notes that he believes that the information gained in discovery will show that a class action is warranted under the Age Discrimination in Employment Act.

29. The conduct of the Defendants has prevented Plaintiff from completing the training and experience he needs to practice medicine and gain income commensurate with other Resident Physicians. The conduct of the Defendants has prevented Plaintiff from selection for employment by a hospital, medical firm, and or other health organization, by qualifying and placing non-U.S. Citizens in place of U.S. Citizens for financial gain. The conduct of the Defendants in denying him the opportunity to become a Resident doctor and a full medical doctor will continue unless or until this Court enters a declaration that Plaintiff is certified and

licensed to practice medicine as a Resident Doctor in hospitals and other health care institutions, and grants an Injunction that prohibits the Defendants from use of age as a bar to employment or as a factor in selection procedures; requires the Defendants to advise their subordinates and members that use of age or age related features as factor in the selection of Resident Doctors is prohibited; requires the defendants to place qualified U.S. Citizens in Residency jobs before placing non-U.S. Citizens; and requires the Defendants to advise their subordinates and members to employ qualified U.S. Citizens before non-U.S. Citizens.

30. The Plaintiff also alleges that the "Match," as it is usually called, requires prospective medical resident applicants to enter into contracts with the Defendants to apply to various residency providers. The Defendants then notify various residency providers the interest of the applicants. The defendants are the sole agents who collect and distribute this information. Residency providers select applicants to interview from the applicant list provided by the defendants. The defendants collect fees for this service and can tailor the list provided to the residency providers to influence the applicants selected. Residency providers provide a list of applicants they would like to hire to the defendants. All parties participating in the Match are required to use the defendants. Failure to comply with any rules of any defendant will result in exclusion from the Match. On a certain date the NRMP, through an algorithm maintained exclusively by the defendants, matches the prospective employees and the lists of the institutions, so that the results are that one prospective medical employee is matched with one residency program. *See Jung, supra*, 390 F. Supp. 2d at 125. Plaintiff alleges that the by result of the contracts, the Defendants operate a system which eliminates a competitive market and substitutes a centralized "anti-competitive allocation system that assigns to a single specified residency program" that is in violation of the antitrust laws of the United States. *See Jung, supra*,

390 F. Supp.2d at 125–26.

## CONCLUSION

This Court should grant an Injunction prohibiting the Defendants from continuing their use of an age discriminatory Match system that excludes or tends to exclude older prospective employees from positions as Resident Doctors. Additionally, the Court should issue a Declaratory Judgment that such that the Match system is unlawful under the ADEA and the Sherman and other Anti-trust laws. Additionally, the Court should require the Defendant to make whole the Plaintiff by granting his request for relief, including back pay and loss of income, and a declaratory judgment that the conduct of the three Defendants was unlawful and grant the Plaintiff preference over alien applicants for admission to practice medicine in the Unites States. The Court should also issue an injunction prohibiting the Defendants from engaging in such unlawful practices in the future.

Respectfully submitted,

David L. Rose
Rose Advocate for Civil Rights
4611 Norwood Dr.,
Chevy Chase, MD 20815
202 769-5860
daver@roselawyers.com

March 6, 2014.